Munhall, Appellant, *v*. Travelers Insurance Co.

328

Argued March 19, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*Edward O. Tabor,* of *McCahill & Tabor,* for appellants.—The statement of claim sets forth a legal cause

of action: Keystone M. & S. Bed Co. v. Underwriters, 21 Pa. Superior Ct. 38; Benner v. Fire Assn., 229 Pa. 75.

Defendant is estopped from denying liability: Lemmon v. Rubber Co., 260 Pa. 28; Penna. Co. v. Ins. Co., 295 Pa. 286; Malchinsky v. Ins. Co., 90 Pa. Superior Ct. 1; Etter v. Ins. Co., 54 Pa. Superior Ct. 187.

A written policy was not agreed upon nor was it necessary.

*John R. Bredin,* with him *Dalzell, Dalzell & McFall,* for appellee.—Averments made on information and belief are defective unless accompanied by an averment of expectation of ability to prove them at the trial of the case: Mendenhall v. Jackson, 268 Pa. 123; Wakely v. Ins. Office, 246 Pa. 268, 275; McLennan, v. Construction Co., 245 Pa. 567.

The application is an offer by the applicant, and by necessary inference shows that the agents had no authority to bind the company: Ins. Co. v. Johnson, 23 Pa. 72; Ripka v. Ins. Co., 36 Pa. Superior Ct. 517; Hamilton v. Ins. Co., 5 Pa. 339.

The written application, the offer of Munhall, was never accepted by defendant company.

Nor is there a contract by estoppel: Ins. Co. v. Johnson, 23 Pa. 72; Ripka v. Ins. Co., 36 Pa. Superior Ct. 517.

OPINION BY MR. JUSTICE SCHAFFER, May 12, 1930:

On January 14, 1927, Herbert N. Munhall signed an application for life insurance to the Travelers Insurance Company, of Hartford, Connecticut; in it he named his wife, the plaintiff, as the beneficiary of the policy to be issued. The application was sent in to the company on January 20th, the premium was paid on January 26th, and the applicant died on January 29th. No policy was issued. This action was brought on the claim that an oral contract of insurance was effected. To the

plaintiff's statement an affidavit of defense by way of demurrer was filed, raising the legal questions that plaintiff had not stated a cause of action, and that her statement shows that no contract of any kind existed between her deceased and defendant. The court below being of opinion that no contract was entered into and that no liability existed, entered judgment for defendant on the questions of law raised, from which action plaintiff brings to us this appeal. ·

The statement of claim set forth that defendant is authorized to issue policies of life insurance in Pennsylvania and has a general branch office in the City of Pittsburgh, that the deceased applied to defendant through its authorized agent, Crawford Cunningham, for a policy upon his life in the sum of $10,000, payable to plaintiff, that Cunningham obtained the assistance of defendant's general agent, Warren Hampe, and that these two took the deceased to the examining physician of defendant for physical examination, that at the physician's office the deceased said to the agents that he desired to be insured by defendant in the sum named, whereupon the agents told the deceased that defendant would insure him in that sum if he made written application and submitted himself to physical examination by the physician in whose office he then was, and if the physician certified him to be acceptable and if he paid the premium and was acceptable to the defendant. It was recited that the deceased filled out and signed the written application and delivered it to Cunningham and that it is in the possession of defendant, and that the physician reported deceased to defendant as fit to be insured. It was set forth that upon being informed by the physician and agent that he had been approved, deceased, on January 20th, paid the annual premium of $251.90 to Cunningham and that the latter on January 26th transmitted the same to the defendant's general agent, the treasurer of its Pittsburgh Branch Office authorized to receive it; that the defendant having been

satisfied from the reports of its agent and physician that the deceased was a proper person to be insured and that he was an acceptable life insurance risk, accepted the premium and converted it to its own use on January 26th; that several days thereafter, after his application had been accepted by defendant, the deceased became suddenly sick with pleurisy and pneumonia; that the defendant having accepted the premium became the insurer of the deceased and should have issued and delivered to him its standard policy. It was averred upon information and belief, without disclosing the source of the information, that the defendant prepared and executed its standard form of policy evidencing its agreement to pay the amount of insurance named to the plaintiff upon the death of her husband, but did not deliver the policy. It was recited that defendant, upon learning of the illness of the deceased, but after it had accepted him as a proper life insurance risk, and after it had converted the premium paid by him to its own use, wilfully and maliciously and fraudulently (without specification of what the fraud consisted) refused to deliver the policy. It was set up that by its actions defendant prevented the deceased from obtaining other insurance. There was an averment of death on January 29th and of the furnishing of proofs thereof and of defendant's offer to return the premium on April 5th and a refusal.

As the written application is attached to the statement of claim, we are not required to take plaintiff's construction of it in determining whether she has a cause of action, but will construe the paper ourselves. It is the customary form application for life insurance and is addressed to "The Travelers Insurance Company, Hartford, Connecticut." The applicant knew, therefore, that it had to go to the home office of the company before being acted upon. It is set forth in the statement of claim that it was not transmitted there until January 26th, only three days before the applicant's death. It contains a blank "For home office endorsement," which

had not been filled up, affirmatively showing that no action had been taken on the application at the home office. Furthermore, the application itself shows that no binding contract of insurance was to be made until the issuance of the written policy, as it says over the applicant's signature, "I hereby agree for myself and for any person who may have or claim an interest in any contract *which may be issued upon this application*......and that the contract *issued hereupon*...... That *my acceptance* of any contract *issued* on this application shall constitute a ratification by me of any corrections, additions or changes made by the company and noted in the space provided for 'Home office endorsement only.'" These written declarations of the deceased show that no oral contract of insurance was contemplated, but that the contract was to be complete only with the issuance of the written policy. The application further shows that it was the company itself which was to enter into the contract, not its agents. The statement does not aver that the agents had power to approve applications,—indeed the application itself shows they had not,—nor does it aver any authority in them to bind the company, or to enter into contracts in its behalf. As to the averment on information and belief that the defendant prepared and executed a written policy, no source of information is disclosed: Glassport Trust Co. v. Fleightner, 300 Pa. 317, and as to this and the allegation that defendant fraudulently refused to issue and deliver it, there is no specification of the alleged fraud and no averment as to either allegation that appellant expects to prove them at the trial. Averments made upon information and belief are defective unless accompanied by an averment of expectation of ability to prove them at the trial of the case: Mendenhall v. Jackson, 268 Pa. 123; Wakely v. Sun Insurance Co., 246 Pa. 268, 275; McLennen v. Public Utilities Co., 245 Pa. 567. The application, as its language discloses, was but a proposal for insurance. "When, as here, it is

plain that the application and payment of the premium amount only to a proposal for insurance, we cannot make a contract out of it": Insurance Co. v. Johnson, 23 Pa. 72, 75. "An application for life insurance is not a contract. It is only a proposal to contract...... The payment of the premium when the application is signed does not bind the company": Travis v. Nederland Life Ins. Co., 104 Fed. 486, 488; Cherokee Life Ins. Co. v. Brennum, 203 Ala. 145, 82 So. 175; 1 Couch, Insurance 146, section 84. The receipt of the premium and holding it until after the death of the applicant would not give rise to a contract of insurance: Insurance Co. v. Johnson, 23 Pa. 72; Steinle v. New York Life Ins. Co., 81 Fed. 489; Dorman v. Connecticut Fire Ins. Co., 41 Okla. 509, 139 Pac. 262; 51 L. R. A. (N. S.) 873, 875. As to the averments that defendant prepared and executed a written policy, and fraudulently refused to issue and deliver it, there is no legal significance in them. As the application was but an offer, the company was free to accept or reject it. The mere execution of the policy is not an acceptance; an acceptance, to be complete, must be communicated to the offeror, either directly, or by some definitive act, such as placing the contract in the mail. The test is not, as appellant seems to think, intention alone. See 1 Couch, Insurance 155, section 87.

We are of opinion that in addition to what has been said as to plaintiff's inability to recover, a statute not referred to in the brief on either side in terms prevents oral contracts of life insurance in this State. This act (Act of May 17, 1921, P. L. 682, article III, section 517, West's Penna. Statutes (Cumulative Supplement 1928), page 542, section 317), is a reënactment of the provision of the Act of May 1, 1876, P. L. 53, 56. It provides: "Policies of insurance, made or entered into by any ......company, may be made either with or without the seal thereof, and they shall be subscribed by the president, or such other officer as may be designated by

the directors......for that purpose, and......attested by the secretary, and when so subscribed and attested, shall be obligatory on the company" and its effect is that all contracts of life insurance must be in writing (a wise and salutary requirement to prevent fraud) that they shall be subscribed by the president of the company or some other designated officer and be duly attested "and when so subscribed and attested, shall be obligatory on the company." Under this language, a contract of insurance not in writing is not obligatory on the company. Section 410 of the Act of 1921 (West's Supplement, page 548), which stipulates that no policy shall be issued or delivered unless it contains certain uniform provisions there specified, clearly implies that all contracts of life insurance must be in writing. The State possesses the power to prescribe regulations for the conduct of the insurance business: Com. v. Vrooman, 164 Pa. 306.

The judgment is affirmed.